1  Wilson Elser Moskowitz Edelman & Dicker LLP
2  Ian A. Stewart (SBN 250689)
   ian.stewart@wilsonelser.com
3  555 South Flower Street Suite 2900
   Los Angeles, CA 90071
4  Telephone:  213.443.5100
   Facsimile:  213.443.5101

5  ARMSTRONG TEASDALE LLP
   Nicholas B. Clifford, Jr. (*pro hac vice being filed*)
6  nclifford@armstrongteasdale.com
   Michael W. Carwin (SBN 309696)
7  mcarwin@armstrongteasdale.com
   7700 Forsyth Blvd., Suite 1800
8  St. Louis, Missouri 63105
   Telephone:  314.621.5070
9  Facsimile:  314.621.5065

10  Attorneys for Grande Communications Networks LLC

11          **UNITED STATES DISTRICT COURT**
12          **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| 14  IN RE SUBPOENA TO<br>15<br>16  IP-ECHELON PTY, LTD<br>17<br>18 | Misc. Case No. 2:18-mc-125<br><br>(Civil Action No. 1:17-cv-00365-LY)<br>(currently pending in the United States District Court for the Western District of Texas) |
| 19  Related Action:<br>20<br>21  UMG RECORDINGS, INC. et al.,<br>22              Plaintiffs,<br>23<br>24         v.<br>25  GRANDE COMMUNICATIONS<br>    NETWORKS LLC,<br>26<br>27              Defendant. | **GRANDE COMMUNICATIONS NETWORKS LLC'S MOTION TO COMPEL THIRD PARTY IP-ECHELON PTY, LTD TO COMPLY WITH SUBPOENA TO TESTIFY AND TO PRODUCE DOCUMENTS** |

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Despite numerous but ultimately unsuccessful efforts to obtain cooperation from third-party IP-Echelon Pty, Ltd ("IP-Echelon"), Movant Grande Communications Networks LLC ("Grande") seeks to enforce a federal subpoena (attached as Ex. 1 to the Declaration of Nicholas B. Clifford) on IP-Echelon, requiring the production of documents and appearance for a deposition in an underlying secondary copyright infringement action pending in the Western District of Texas, styled *UMG Recordings, Inc., et al. v. Grande Communications Networks LLC*, No. 1:17-cv-00365-LY.  The subpoena complied with FED. R. CIV. P. 45, was served on IP-Echelon with its outside counsel's consent on June 5, 2018,[1]  and commanded compliance in Los Angeles, California, where it is located.

Three months later, after repeated telephone calls and emails between Grande's counsel and IP-Echelon's counsel which have achieved little other than delay, IP-Echelon has not produced a single document or agreed to a date for its deposition.  Given the absence of remaining time in the discovery schedule in the underlying *UMG v. Grande* matter, Grande cannot wait any longer for IP-Echelon to fulfill its obligations in responding to Grande's federal subpoena.

## **BACKGROUND**

In the underlying copyright infringement action in the Western District of Texas, Plaintiffs are record companies who seek to hold Grande, an Internet service provider in Texas, secondarily liable for the alleged direct infringement of its subscribers.  *See generally* Complaint, attached as Ex. 2 to Clifford Decl.

---

[1] IP-Echelon repeatedly dodged Grande's attempts to serve process on its Hollywood, CA office, forcing Grande to file a motion seeking authorize service of the subpoena by the United States Marshal in the Central District of California. *See* ECF Doc. 94, *UMG Recordings, Inc., et al. v. Grande Communications Networks LLC*, No. 1:17-cv-00365-LY (W.D. Tex.).  Several days after Grande filed its motion, IP-Echelon's outside counsel contacted Grande's counsel and agreed to accept service of the subpoena.  Accordingly, Grande withdrew its motion.

Plaintiffs claim they used a copyright enforcement company called Rightscorp, Inc. ("Rightscorp") to investigate and identify infringements by Grande subscribers over BitTorrent peer-to-peer file sharing systems and to provide notice thereof to Grande. *Id.* at ¶¶ 4, 43. Plaintiffs filed suit against Grande on April 21, 2017.

According to its website (www.ip-echelon.com), IP-Echelon is a privately held company with offices in Hollywood, California and Melbourne, Australia that provides "data analytics and audience measurements on unauthorized distribution channels" regarding its clients' content. *See* Ex. 3 to Clifford Decl. It monitors peer-to-peer networks for its clients' content and gathers information about infringing activity. *Id.* IP-Echelon sends out infringement notices and takedown requests for some of the largest entertainment companies in the world. *See* Ex. 4 to Clifford Decl.

According to a 2016 article (Ex. 5 to Clifford Decl., published at https://torrentfreak.com/piracy-phishing-scam-targets-u-s-isps-subscribers-160624/) on a blog called Torrentfreak.com, IP-Echelon was involved in an infringement notice phishing scam, described more fully in the attached article. The perpetrators sent fake IP-Echelon copyright infringement notices regarding certain copyrighted material to an internet service provider (Cox Communications), which then passed them on to its customers. *Id.* The notices threatened the customers with legal action and monetary damages and offered settlements through a link in the notice. *Id.* The article quoted IP-Echelon as saying, "The notices are fake and not sent by us. It's a phishing scam." *Id.* IP-Echelon explained that its infringement notices are digitally signed using the PGP protocol "for ISPs to check authenticity." *Id.* Grande has also received IP-Echelon infringement notices, which include both authenticated, PGP-signed infringement notices from IP-Echelon, as well as fake, non-PGP-signed notices which falsely claim to be from IP-Echelon. *See* Ex. 6 and 7 to Clifford Decl.

In light of this phishing scam involving IP-Echelon and Grande, as well as

the similarity of IP-Echelon's role in investigating and sending infringement notices regarding alleged BitTorrent-based infringements to the role played by Rightscorp for Plaintiffs in this case, Grande decided to subpoena IP-Echelon to produce certain documents and appear for a deposition.  Grande served a subpoena (Ex. 1) on third-party IP-Echelon on June 5, 2018, seeking documents and testimony relating to this phishing scam, as described in the Torrentfreak.com article.  The narrow focus of the subpoena is directed towards materials and testimony from IP-Echelon regarding these spoofed or faked notices, the investigation into the spoofed or fake notices, and the potential security procedures associated with preventing spoofed or fake notices.  *See* Ex. 1.

As reflected in IP-Echelon's Objections to Deposition Subpoena and Document Requests (attached as Ex. 8 to Clifford Decl.), served on June 22, 2018, IP-Echelon objected to every single document request and refused to produce any documents ("Responding Non-Party IPE will not be producing any documents."). Similarly, IP-Echelon objected to every deposition topic and refused to produce a witness on any topic ("Responding Non-Party IPE will not be producing anyone to testify.").  *Id*.  To date, although IP-Echelon's counsel has remained in communication with Grande's counsel, IP-Echelon has not complied with the subpoena in any respect, nor has it sought relief from any court.

In the course of meeting and conferring with counsel for IP-Echelon multiple times between June and September, Grande has repeatedly offered extensions and other accommodations to ease the burden on IP-Echelon in responding to the subpoena.  Clifford Decl. at ¶¶ 11-12.  For example, based on IP-Echelon's concern that the likely designee to testify on behalf of IP-Echelon is located in Australia, Grande has offered to conduct the deposition via a video conference service such as WebEx or Skype.  *Id*.  Grande has repeatedly explained why it believes that IP-Echelon's testimony and documents are relevant to the underlying lawsuit against Grande and offered to narrow the scope of the subpoena

- 3 -

in order to avoid an undue burden on IP-Echelon.  *Id*.  Unfortunately, instead of responding to any of Grande's suggestions or offers of accommodation, IP-Echelon never provided any substantive positions beyond its categorical objections (Ex. 5) and injected delay after delay.

## JURISDICTION

Because the subpoena is directed to IP-Echelon at its Los Angeles place of business and it commands the production of documents and deposition testimony in Los Angeles, this Court has jurisdiction over this miscellaneous case seeking enforcement of the subpoena.  *See* Fed. R. Civ. P. 45(f), Advisory Committee Notes (2013 Amendment).  Where the commanded party objects to a subpoena duces tecum, Rule 45(d)(2)(B)(i) allows the serving party "[a]t any time, on notice to the commanded person" to "move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  The primary responsibility for enforcing Rule 45 subpoenas resides in the district where compliance is required. *Chambers v. Whirlpool Corporation*, No. 11-cv-1733-FMO-JCGx, 2016 WL 9451360, at *3 (C.D. Cal. Aug. 12, 2016).

## ARGUMENT

I.   **GRANDE'S SUBPOENA FOR IP-ECHELON DOCUMENTS AND TESTIMONY IS REASONABLE IN SCOPE AND NARROWLY TAILORED TO RELEVANT SUBJECT MATTER.**

Grande sought documents directly related to the copyright infringement claim against it.  The following list summarizes the documents subpoenaed from IP-Echelon:

1.   Agreements between IP-Echelon and the Plaintiffs/RIAA[2]  regarding Grande;

2.   Communications between IP-Echelon and the Plaintiffs/RIAA

---

[2] The RIAA is the Recording Industry Association of America.  All of the plaintiffs in the underlying action are members of the RIAA.

concerning Grande;

3.   Documents relating IP-Echelon Notices to Grande;

4.   Documents regarding how IP-Echelon detects infringement over P2P networks;

5.   Documents describe the functionality and operation of the IP-Echelon System;

6.   Negative feedback or criticism of the IP-Echelon System and/or IP-Echelon Notices;

7.   Documents describing flaws/problems with the IP-Echelon System;

8.   Documents regarding limitations in the IP-Echelon System's ability to detect copyright infringement;

9.   Deficiencies/inaccuracies identified by ISPs regarding IP-Echelon Notices or the ability of the IP-Echelon System to detect copyright infringement;

10.   Documents reflecting actions taken by IP-Echelon regarding inaccuracies with IP-Echelon Notices;

11.   Communications between IP-Echelon and Rightscorp, Inc.;

12.   Communications with RIAA about problems with the IP-Echelon System and/or IP-Echelon Notices;

13.   Communications between IP-Echelon and TorrentFreak.com regarding fake or spoofed infringement notices, including those reflected in the June 24, 2016 article (https://torrentfreak.com/piracy-phishing-scam-targets-u-s-isps-subscribers-160624/);

14.   Documents reflecting IP-Echelon's knowledge of fake or spoofed infringement notices

15.   Documents regarding IP-Echelon's use of digital signatures using the PGP protocol on IP-Echelon Notices and the reasons for their use (e.g., "IPE notices are signed with PGP for ISPs to check

- 5 -

authenticity").

*See* Ex. 1.  Similarly, the following list summarizes the deposition topics on which Grande seeks testimony from IP-Echelon:

1.    The methods used by the IP-Echelon system to monitor P2P networks in order to identify copyright infringers;

2.    The IP-Echelon System's detection of P2P file sharing activity and ability to identify the subscriber who has downloaded a copyrighted work and to provide a IP-Echelon Notice to the ISP that provides internet service to that same internet subscriber;

3.    IP-Echelon's sending of IP-Echelon Notices to Grande;

4.    IP-Echelon's association with the RIAA/members to send IP-Echelon Notices to Grande.

5.    IP-Echelon's knowledge regarding Grande and its subscribers' acts of infringement;

6.    The development and testing of the IP-Echelon System;

7.    The basis for IP-Echelon's assertion(s) that a particular Grande Subscriber has committed copyright infringement copyrighted works belonging to an RIAA member;

8.    Any values, conditions, or other quantifiable measures that the IP-Echelon System detects or utilizes in order to identify an alleged infringer or send a IP-Echelon Notice;

9.    Flaws with the IP-Echelon System and IP-Echelon Notices;

10.   IP-Echelon's knowledge of inaccuracies in IP-Echelon Notices sent to an ISP;

11.   Communications from ISPs identifying legal and/or factual issues with IP-Echelon Notices and/or the IP-Echelon System;

12.   IP-Echelon's remedies for problems with the IP-Echelon System or IP-Echelon Notices;

- 6 -

13. Relationships between IP-Echelon and any of the Plaintiffs;

14. Relationships between IP-Echelon and the RIAA;

15. IP-Echelon's compensation regarding any legal proceeding against Grande and/or Patriot;

16. Communications between IP-Echelon and TorrentFreak.com regarding fake or spoofed infringement notices, including those reflected in the June 24, 2016 article (https://torrentfreak.com/piracy-phishing-scam-targets-u-s-isps-subscribers-160624/);

17. IP-Echelon's knowledge of fake or spoofed infringement notices;

18. IP-Echelon's use of digital signatures using the PGP protocol on IP-Echelon Notices and the reasons for their use (e.g., "IPE notices are signed with PGP for ISPs to check authenticity").

19. The substance of the documents produced pursuant to the subpoena;

20. IP-Echelon's efforts to locate responsive documents and prepare a witness to provide testimony in response to this subpoena.

These materials serve two key purposes relevant to the underlying case against Grande. First, because Grande's policies require that infringement notices sent to it must contain PGP digital signatures, it wants to authenticate IP-Echelon's quoted statements in the Torrentfreak.com article about using PGP digital signatures, along with testimony about why IP-Echelon uses PGP digital signatures. This testimony may present important contradictions to the evidence regarding Rightscorp, the copyright enforcement company used by Plaintiffs allegedly to investigate infringement by Grande subscribers and to provide infringement notices to Grande, which refused to use PGP digital signatures. Second, Grande intends to explore the nature of and limitations in the IP-Echelon System for detecting infringement and providing notices of that infringement. This testimony will also present important evidence that will differentiate it from the system used by Rightscorp to detect infringement and provide infringement notices.

1    **II.     IP-ECHELON'S OBJECTIONS SHOULD BE OVERRULED.**

2           In response to these document requests in the IP-Echelon subpoena, IP-

3    Echelon served extensive objections, including four pages of general objections

4    and generic, boilerplate objections for each request and deposition topic.  *See* Ex.

5    8. All IP-Echelon's responses and objections are essentially identical.  None of the

6    objections to the requests or deposition topics state any reasoning or factual

7    support specific to the request or the deposition topic.  *Id*.  IP-Echelon's objections

8    are improper and should be rejected.

9           It is well established jurisprudence that general or boilerplate objections

10   such as "overly burdensome" and "oppressive" are improper—especially when a

11   party fails to submit any evidentiary declarations supporting such objections.

12   *Paulsen v. Case Corp*., 168 F.R.D. 285, 289 (C.D. Cal. 1996); *see also McLeod,*

13   *Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990)

14   (objections that document requests were overly broad, burdensome, oppressive,

15   and irrelevant were insufficient to meet objecting party's burden of explaining why

16   discovery requests were objectionable); *Panola Land Buyers Ass'n v. Shuman*, 762

17   F.2d 1550, 1559 (11th Cir.1985) (conclusory recitations of expense and

18   burdensomeness are not sufficiently specific to demonstrate why requested

19   discovery is objectionable).  Similarly, boilerplate relevancy objections, without

20   providing any explanation or argument why the requested documents are not

21   relevant, are improper.  *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186,

22   188 (C.D. Cal. 2006).

23          Moreover, when claiming attorney-client privilege or work product

24   objection, "a party must adequately describe the withheld material without

25   revealing privileged or protected information to allow the propounding party to

26   assess the objection."  *Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012)

27   (citing Fed. R. Civ. P. 26(b)(5)(A)(ii)).  "Merely providing a boilerplate assertion

28   of privilege is insufficient."  *Id*. (citing *Burlington N. & Santa Fe Ry. v. U.S. Dist.*

- 8 -

1   *Court*, 408 F.3d 1142, 1147 (9th Cir.2005)).

2         IP-Echelon's perfunctory discovery objections do not explain why Grande's

3   discovery requests are overly burdensome or oppressive.  Instead, IP-Echelon's

4   objections are bald conclusions that appear copied and pasted.  Moreover, the

5   responses do not describe the withheld material IP-Echelon believes is attorney

6   work product or subject to the attorney-client privilege.  As such, IP-Echelon's

7   boilerplate objections are inappropriate, tantamount to no objection at all.  *See*

8   *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)

9   ("Boilerplate, generalized objections are inadequate and tantamount to not making

10  any objection at all.").  "It is well established that 'all grounds for objections to

11  [discovery] must be stated with specificity [in the initial response] or the objection

12  is waived[.]'"  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D.

13  Cal. 2015) (citations omitted).  "If there is no legitimate basis to resist discovery,

14  the attempt to evade disclosure through reliance on boilerplate objections is an

15  abuse of the discovery process."  *Marti v. Baires*, No. 08-cv-00653-AWI-SKO,

16  2012 WL 2029720, at *7 (E.D. Cal. Jun. 5, 2012) (emphasis in original).

17        To date, IP-Echelon has not produced any documents, has not appeared for a

18  deposition, but has not sought a protective order or other relief from the subpoena.

19  Given IP-Echelon's stated refusal to produce documents or appear for a deposition,

20  Grande has been forced to seek relief from this Court.  *See Lofton*, 308 F.R.D. at

21  280 ("If the party requesting discovery is dissatisfied with any of the responses, the

22  party may move to compel further responses."); *Marti*, 2012 WL 2029720, at *6

23  (overruling the defendant's boilerplate objections and granting the plaintiff's

24  motion to compel a response).

25  ///

26  ///

27  ///

28  ///

- 9 -

## CONCLUSION

For the foregoing reasons, Grande respectfully requests that the Court grant this Motion to Compel, issue an order compelling IP-Echelon to produce all responsive documents immediately and to produce a knowledgeable authorized witness for a deposition within ten days of its document production, and for such other and further relief as the Court deems appropriate.

Dated:  September 14, 2018.

By: /s/ Ian A. Stewart
    Ian Stewart (SBN 250689)
    Wilson Elser Moskowitz
      Edelman & Dicker LLP
    555 South Flower Street Suite 2900
    Los Angeles, CA 90071
    Telephone:  213.443.5100
    Facsimile:  213.443.5101
    ian.stewart@wilsonelser.com

    Nicholas B. Clifford (pro hac vice being filed)
    Michael W. Carwin (SBN 309696)
    Armstrong Teasdale LLP
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Telephone:  314.621.5070
    Fax:  314.621.5065
    nclifford@armstrongteasdale.com
    mcarwin@armstrongteasdale.com

    Attorneys for GRANDE
    COMMUNICATIONS NETWORKS LLC

3149948v.1